IN THE MATTER OF THE APPEAL TO THE SURROGATE OF CAYUGA COUNTY, FROM AN ASSESSMENT OF THE TAX IMPOSED BY CHAPTER 483 OF THE LAWS OF 1885, AGAINST THE LEGATEES OF AND UNDER THE LAST WILL AND TESTAMENT OF WILLIAM CAGER, DECEASED.

*Construction of a devise to a wife for her life with a power of disposal — collateral inheritance tax — 1885, chap. 483, as amended by chapter 713 of 1887 — an assessment of the estate in remainder cannot be made during her lifetime.*

William Cager died leaving a last will and testament by which he gave, devised and bequeathed all his estate, both real and personal, after his lawful debts were paid and discharged, to his wife, " to be used and enjoyed and at her disposal during the term of her natural life," and gave and devised one-third of his real estate and personal property " that may remain at the decease of my (his) wife, Mary Cager, to my adopted daughter, Mary Griffin, that is to say, the use of said one-third during her natural life," the remainder being given to the children of the said Mary Griffin.

Upon an appeal from a decree of the surrogate confirming the report of an appraiser appointed pursuant to chapter 483 of 1885, to determine the tax that should be paid upon the legacies and collateral inheritances *i. e.*, upon the life estate of the adopted daughter and the estates in remainder of her children.

*Held*, that the testator gave to his wife more than a life estate in the property, both real and personal, under the first clause of the will, and that the same may be something less than the absolute ownership or unconditional power of making disposition of the same.  (HAIGHT, J., dissenting.)

That the devisees and legatees named in the second and third clauses of the will, whose interests were subject to the life estate in the testator's wife, were given so much of the estate of the testator as remained undisposed of and reserved by the widow during her lifetime, and such estates in remainder were not capable of ascertainment and assessment for the tax during the lifetime of the testator's wife.

That in disposing of this appeal it was not necessary to determine the nature and character of the limitations, if any, which may be imposed on the widow in the use and enjoyment of the *corpus* of the estate as the right to impair and diminish the same, for any purpose whatever, renders the assessments under the act premature during her lifetime.

That the order should be reversed in all respects.

APPEAL from an order of the Surrogate's Court of Cayuga county affirming the assessment of a tax upon the life estate of the testator's adopted daughter and the estates in remainder of her children.

*A. P. Rich*, for the appellant.

*Robert L. Drummond*, district attorney, for the county, respondent.

HAIGHT, J.:

On the 30th day of May, 1886, William Cager died, leaving a last will and testament which was duly proven and admitted to probate by the Surrogate's Court of Cayuga county. The will provided : "First. After all my lawful debts are paid and discharged I give, devise and bequeath all my estate, both real and personal, of what nature and kind soever, to my wife, Mary Cager, to be used and enjoyed and at her disposal during the term of her natural life. Secondly. I give and devise one-third of my real estate and personal property that may remain at the decease of my wife, Mary Cager, to my adopted daughter, Mary Griffin. That is to say, the use of said one-third during her natural life." Then follow provisions disposing of the remainder to the children of Mary Griffin. The surrogate, pursuant to chapter 483 of the Laws of 1885, appointed an appraiser to determine the tax that should be paid upon the legacies and collateral inheritance, who duly made and filed his report, which was confirmed by the Surrogate's Court.

The main question raised upon this appeal is as to the estate taken under the will by Mary Cager, the widow, she claiming a fee. The rule is, that where an estate is given in one part of a will, in clear and decisive terms, such estate cannot be taken away or cut down by subsequent words that are not as clear and decisive as the words of the clause giving the estate. But, in constructing wills, the intention of the testator must be our guide, and in determining such intent we must take into consideration the whole instrument and give effect to all of its provisions so far as we can consistently with

the rules of law. (*Roseboom* v. *Roseboom*, 81 N. Y., 356; *Wager* v. *Wager*, 96 id., 164.) By referring to the first clause of the will we see that the widow is given the real and personal estate to be used and enjoyed and at her disposal during the term of her natural life. The words "during the time of her natural life," qualify that which precedes, and limit the use, enjoyment and disposal of the property. Were it not for the use of the words "and at her disposal" there could be no question but that a life estate only was intended. The word "disposal," as it is commonly used, varies in meaning. It may mean power or authority to sell, give away or destroy; or it may mean the right to control, manage, use and govern. In determining the sense in which the term was used, we must consider that which precedes and follows it. In doing this we find not only the limitation of "during the term of her natural life," but we find that the testator has proceeded to dispose of the remainder after her death. So that in case it was intended to give her the fee, then the subsequent provisions of the will are repugnant and void. In this connection we must bear in mind the rule already referred to; that is, in determining the intent, we must take into consideration the whole instrument and give effect to all of its provisions so far as we can consistently. If, therefore, the words "and at her disposal" mean the right to control, manage, use and govern during the time of her natural life, this provision is made consistent with those which follow and give effect to the whole instrument. The words "that may remain" occurring in the second clause of the will, do not, in my opinion, affect the construction given or enlarge the estate of the widow. I am, consequently, of the opinion that the construction given to the will by the surrogate is correct.

But there is another question in the case to which the attention of the surrogate does not appear to have been called. The order assessing the tax was made on the 12th day of August, 1887; chapter 713 of the Laws of 1887 went into effect June 25, 1887; by that act chapter 483 of the Laws of 1885 was amended so as to except from the provisions of the act "any child or children adopted as such in conformity with the laws of the State of New York, or any person to whom the deceased, for not less than ten years prior to his or her death, stood in the mutually

acknowledged relation of a parent." * * * And "all acts or parts of acts, inconsistent with the provisions of this act, are hereby repealed." The law of 1885 taxed the collateral inheritance of adopted children, whilst the law of 1887 exempts them; in this particular the law of 1885 is in conflict, and is therefore repealed. It follows that the assessment of the life estate of Mary Griffin, the adopted daughter, was unauthorized.

But my brethren are of the opinion that the testator gave to his wife more than a life estate in the property, both real and personal, under the first clause of the will, and that the same may be something less than the absolute ownership or unconditional power of making disposition of the same; that the devisees and legatees named in the second and third clauses of the will were given so much of the estate of the testator as remained undisposed of and unused by the widow during her lifetime. In disposing of the question presented by this appeal it is unnecessary to determine the nature and character of the limitations, if any, which may be imposed on the widow in the use and enjoyment of the *corpus* of the estate, as the right to impair and diminish the same for any purpose whatever, renders the assessment under the act premature during her lifetime. This view of the case, entertained by a majority of the court, leads to a reversal of the order in all respects. All agree upon the construction given to the law of 1887.

Present — Smith, P. J., Barker, Bradley and Haight, JJ.

Decree reversed.